IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| *Petitioner*, § | |
| § | |
| v. § | Civil Action No.  SA-11-CV-731-XR |
| § | |
| $399,101.96 MORE OR LESS, IN UNITED § | |
| STATES CURRENCY CONTAINED IN § | |
| FIRST UNITED BANK, YOUFIRST § | |
| MONEY MARKET ACCOUNT # 5047816, § | |
| § | |
| *Respondent*. § | |

## ORDER

On this day the Court considered Claimant's motion for summary judgment (Doc. No. 33). For the following reasons, the Court DENIES the motion.

**I. Background**

**A. Factual Background**[1]

In or around February of 2009, several government agencies began conducting an investigation into allegations that United States Army Master Sergeant Lawrence Fenti ("Fenti"), Dr. Heidi Lynn Werner Webster ("Webster"), and others had conspired to defraud the United States in violation of 18 U.S.C. § 201.[2] This investigation was focused upon several United

---

[1] The following factual background summary is predicated on facts contained in Petitioner's verified complaint for forfeiture, Claimant's instant motion for summary judgment, and Petitioner's response to the instant motion.
[2] The agencies involved in the investigation included: (1) the Army Criminal Investigation Division's Major Procurement Fraud Unit, (2) the Criminal Investigation section of the Internal Revenue Service, (3) the Defense Criminal Investigative Service, and (4) the Federal Bureau of Investigation.

1

States Army contracts (the "Army contracts") awarded to Data Dynamics, Inc., represented here by its president Gail Martinson ("Claimant").

The parties appear to agree that, in or around March of 2008, Claimant was contacted by Webster regarding contracts to provide temporary MRI services to the Brooke Army Medical Center ("BAMC") in San Antonio, Texas. Although Claimant had previously contracted with the United States government, Claimant did not have any prior MRI experience. Nevertheless, Webster informed Claimant that she was an expert in providing MRI services and would work as Claimant's consultant if Claimant was successful in obtaining the MRI contracts. Claimant was then told that Fenti, who had been Webster's subordinate from 2003 to 2005 while working at an Army hospital in Kansas, would contact Claimant regarding these contract opportunities. During the relevant period, Fenti was employed in the BAMC Radiology Department and often performed the duties of the radiology department's Contracting Officer Representative on procurement contracts. These duties involved monitoring contractor performance while simultaneously serving as the technical liaison between the contractor and the government's Contracting Officer.

Subsequently, Claimant was awarded an MRI contract on June 27, 2008 ("Contract 1"), under which Claimant was to provide a mobile MRI 1.5T System to the BAMC for twelve months. The file for Contract 1 showed that Fenti had written both the description of the work as well as the independent cost estimate. The file further reflected that Fenti had provided a recommendation that Claimant receive the contract. Under this contract, Claimant received monthly payments in the amount of $117,940, which were increased to $125,050 when the contract was extended in June of 2009 through November of 2009.

Claimant was also awarded a second MRI contract on July 16, 2008 ("Contract 2"), under which Claimant was to provide the BAMC: three MRI systems, one modular ancillary building, two MRI technologies, and one MRI Medical Clerk for twelve months. Again, the contract file reflected that Fenti had written the work description and cost estimate, as well as a recommendation that Claimant receive the contract. Under Contract 2 Claimant received monthly payments in the amount of $307,329. As with the first MRI contract, Contract 2 was subsequently extended through November 30, 2009.

From the monthly payments received under Contracts 1 and 2, Claimant reserved an agreed upon amount and wired the remainder to Webster to cover consulting fees and additional costs. Any remaining funds were then to be split between Claimant and Webster. Claimant now asserts that Webster provided Claimant with fabricated monthly bills and that Webster had submitted false invoices to the Army in relation to the contracts.[3] Overall, from September 19, 2008 through May 1, 2009, Claimant transferred $3,402,969.50 to Webster's account in Kansas.

Throughout the same period, the government's investigation revealed that money had been wired from Webster's account to the account of MJS Consulting, LLC, whose sole manager is Fenti's mother. Further, from December of 2007 to April of 2009, approximately $71,015.35 was provided directly to Fenti by wire transfers and checks from Webster's account. Additionally, on both October 15, 2008, and February 18, 2009, $50,000 was wired from Webster's account to 3MPBW, Inc., a company which belongs to Webster's father. Finally, on July 24, 2009, $120,000 was transferred by Webster to the account of the law firm representing Fenti.

---

[3] Cl.'s MSJ at 5.

On July 6, 2011, agents with the Internal Revenue Service seized approximately $399,101.96[4] (the "Respondent Property") from Claimant's account. The Respondent Property is made up of payments from the Army to Claimant under the terms of Contracts 1 and 2. Claimant now asserts rightful ownership of the Respondent Property and requests that it be removed from the government's possession and returned.

**B. Procedural Background**

The United States ("Petitioner") filed its verified complaint for forfeiture on September 1, 2011. In that verified complaint, Petitioner set out the statutory basis for forfeiture, stated the grounds for jurisdiction and venue, and set forth facts surrounding the Respondent Property in support of forfeiture. On October 12, 2011, Claimant filed a statement of claims, and subsequently filed its answer in November of 2011.

On December 21, 2011, Petitioner filed a motion to stay civil proceedings[5] which was granted by the Court. The stay on discovery and the filing of pretrial motions was subsequently lifted on May 21, 2012. Thereafter, in December of 2012, Claimant filed its first amended answer and counterclaim with leave of the Court.

On May 13, 2013, Claimant filed the instant motion for summary judgment on the grounds that the Respondent Property is not subject to civil forfeiture, or in the alternative, that Claimant is an "innocent owner" as defined under 18 U.S.C. § 983(d). Petitioner filed a response to the instant motion and Claimant filed a reply.

---

[4] This amount is comprised of $432,379, reflecting the final monthly payments for Contracts 1 and 2, less $33,600 representing costs and expenses incurred by Claimant. The difference between the Respondent Property that was seized and this amount ($398,779) is apparently explained by the interest accrued on the money. Cl.'s MSJ at 7-8.
[5] Petitioner had moved to stay the case to allow a related criminal investigation to proceed.

## II. Legal Standard

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden of demonstrating that it is entitled to summary judgment. To do so, the movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party cannot demonstrate the absence of a genuine issue of material fact summary judgment is inappropriate, regardless of the nonmovant's response. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If, however, the moving party has carried its initial summary-judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c).

To conclude that there is no genuine issue of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court must draw reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive a motion for summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

### III. Discussion

#### A. Whether the Respondent Property is Subject to Forfeiture

Claimant contends that the Respondent Property does not fall within the scope of 18 U.S.C. § 981(a)(1), the civil forfeiture statute setting out several categories of property that are subject to forfeiture to the United States. *See* 18 U.S.C. § 981(a)(1). Specifically, Claimant refutes Petitioner's claims that the Respondent Property is subject to forfeiture under sections 981(a)(1)(A) and 981(a)(1)(C).[6] Accordingly, for the Court to grant Claimant's motion for summary judgment on this basis, there must be no genuine dispute as to whether the Respondent Property is subject to forfeiture under either of these sections. Because the Court concludes that a fact issue does exist with regard to the applicability of section 981(a)(1)(C), section 981(a)(1)(A) need not be considered here.

Section 981(a)(1)(C) states that "[a]ny property, real or personal, which constitutes or is derived from proceeds[7] traceable to … any offense constituting specified unlawful activity (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such an offense" shall be subject to forfeiture to the United States. 18 U.S.C. § 981(a)(1)(C) (internal quotation marks omitted). The Government bears the burden of proving by a preponderance of the evidence that

---

[6] *See* Cl.'s MSJ at 9, 14.
[7] The term "proceeds" is defined as:

> (A) In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.
>
> (B) In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services.

18 U.S.C. § 981(a)(2).

the property is subject to forfeiture. *Id.* at § 983(c)(1); *United States v. $157,808.97, More Or Less, in U.S. Currency*, 309 F. App'x 851, 853 (5th Cir. 2009).

Here, it appears to be undisputed that Webster bribed Fenti to induce him to award the MRI contracts to Claimant, and that such bribery constitutes a "specified unlawful activity" within the meaning of section 981(a)(1)(C).[8] Petitioner has provided enough evidence to support a finding that the Respondent Property constitutes, or is derived from, proceeds of the bribery because there is a genuine dispute as to whether the contracts were awarded to Claimant as a direct result of the bribes. Accordingly, Petitioner has produced enough evidence to withstand summary judgment on the issue of whether the Respondent Property falls within the purview of section 981(a)(1)(C). *See United States v. St. Pierre*, 809 F. Supp. 2d 538, 544 (E.D. La. 2011) (finding that the defendant's bribery of a public official, which resulted in procuring two contracts, could "certainly be said to have generated or produced the [contracts], and therefore the [contract] revenues were in some sense generated through the illegal transactions resulting in the forfeiture").

It appears that Claimant's only argument that section 981(a)(1)(C) does not cover the Respondent Property hinges upon this Court's acceptance of a principle Claimant derives from *United States v. St. Pierre*.[9] In *St. Pierre*, the defendant paid bribes and kickbacks to a City of

---

[8] 18 U.S.C. § 1956(c)(7) defines the term "specified unlawful activity" in part as "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31." 18 U.S.C. § 1956(c)(7)(A). The referenced section, 1961(1), provides a definition of "racketeering activity" and states that the term means "any act which is indictable under … [s]ection 201 (relating to bribery)." *Id.* at § 1961(1)(B). Finally, bribery of a public official is not an act that is indictable under subchapter II of chapter 53 of title 31. *See* 31 U.S.C. §§ 5311-5332. Accordingly, bribery of a public official in violation of 18 U.S.C. § 201, or a conspiracy to commit such an offense, constitutes "specified unlawful activity" for purposes of section 981(a)(1)(C) of the civil forfeiture statute. *See id.*; 18 U.S.C. §§ 981(a)(1)(C), 1956(c)(7)(A), 1961(1)(B).

[9] *See* Cl.'s MSJ at 14-16. The Court acknowledges that Claimant advances other arguments with regard to whether the Respondent Property is subject to forfeiture; however, these revolve around Claimant's lack of knowledge of the unlawful scheme. Although Claimant's knowledge would be relevant to the Respondent Property's forfeiture under section 981(a)(1)(A), such knowledge is not a prerequisite to forfeiture under section 981(a)(1)(C). Rather, section 981(a)(1)(C) allows for forfeiture of property that constitutes or is derived from proceeds traceable to a violation of certain statutory provisions, regardless of a claimant's subjective knowledge regarding the grounds for forfeiture.

New Orleans official in order to procure a contract for a company in which the defendant had a twenty-five-percent ownership interest. 809 F. Supp. 2d at 540-41. The court noted that although all of the revenues under the IT contract were created by the defendant's criminal activity and were proceeds under section 981(a)(2)(B), portions of those revenues were diverted to his business partners before they were ever acquired by the defendant because the defendant only held a twenty-five-percent interest in the company. *See id.* at 544-45. Consequently, the court determined that it would be "unreasonable and inconsistent with the purpose of forfeiture" to require the defendant to forfeit funds representing the seventy-five-percent interest he had never acquired. *Id.* at 545.

Based upon the *St. Pierre* court's decision, Claimant appears to argue for the principle that only property that is actually acquired by "wrongdoers" is forfeitable when the section 981(a)(2)(B) definition of "proceeds" is applicable.[10] Thus, Claimant argues that the Respondent Property is shielded because Claimant is not a "wrongdoer." In addition to noting that this seems to constitute an unwarranted extrapolation of the *St. Pierre* opinion, this Court declines to adopt Claimant's proposed rule for several reasons.

First, the principle that Claimant derives from *St. Pierre* is contradictory to the nature of a civil forfeiture action. Such an action is "in rem," and thus is one proceeded against the property itself. *United States v. Ursery*, 518 U.S. 267, 275 (1996). By resort to a legal fiction, it is the property that is "held guilty and condemned as though it were conscious instead of inanimate and insentient." *Id.* Since it is not a person that is proceeded against, it does not matter if the wrongdoer whose conduct forms the predicate for the forfeiture action was ever charged, convicted, or even acquitted of the misconduct. *See id.*; *United States v. 1700 Duncanville Rd.*, 90 F. Supp. 2d. 737, 740 (N.D. Tex. 2000), *aff'd*, 250 F.3d 738 (5th Cir. 2001). Accordingly, a

---

[10] *See* Cl.'s MSJ at 16.

8

claimant's culpability is essentially irrelevant in a civil forfeiture action. *See United States v. Davis*, 648 F.3d 84, 92 (2d Cir. 2011). Thus, Claimant's contention that the operation of the civil forfeiture statute is affected by the culpability of the subject property's owner directly conflicts with the nature of the action itself, which is concerned only with the *property's* "culpability."

Second, the civil forfeiture statute never states that only property that is acquired by wrongdoers is made subject to forfeiture when section 981(a)(2)(B) is applicable. *See generally* 18 U.S.C. § 981. Rather, section 981(a)(1) merely states that "[t]he following property is subject to forfeiture," and then proceeds to list eight categories of covered property. *See id.* at § 981(a)(1)(A)-(H). Among these eight is subsection (C), which as noted above applies to "any property … which constitutes or is derived from proceeds traceable to … any offense constituting specified unlawful activity." *Id.* at § 981(a)(1) (internal quotation marks omitted). Thus, a plain reading of the statute indicates that it contemplates the forfeiture of property traceable to "specified unlawful activity" regardless of whether its owner was a wrongdoer in any sense.

Finally, Claimant's derived principle is further contradicted by the existence of an affirmative defense for "innocent owners" within the statute covering the general rules for civil forfeiture proceedings. *See* 18 U.S.C. 983(d). In general, this defense operates such that an owner who acted in good faith and had no knowledge of the conduct giving rise to the forfeiture will not have to forfeit property that would otherwise be subject to forfeiture under 18 U.S.C. § 981(a)(1). *See id.* An adoption of Claimant's principle, however, would serve to render the "innocent owner" defense a nullity in instances for which it was created. In other words, Claimant's proposed rule that only property that is acquired by wrongdoers is subject to forfeiture when section 981(a)(2)(B) applies, if accepted, would potentially result in the

"innocent owner" defense serving no purpose because the issue of the owner's culpability would in effect be encompassed within the initial 18 U.S.C. § 981(a)(1) analysis.

Overall, Claimant's proposed rule finds no support in either controlling civil forfeiture case law or the relevant statutes.

In consideration of the foregoing analysis, the Court concludes that a genuine issue of material fact exists as to whether the Respondent Property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C). Therefore, Claimant's motion for summary judgment is DENIED with regard to this issue.

**B. Whether Claimant is an "Innocent Owner"**

In Claimant's second argument for summary judgment, Claimant contends that she is an "innocent owner" under 18 U.S.C. § 983(d), and thus that the Respondent Property is shielded from forfeiture.[11] Because Claimant is the moving party, she bears the initial burden of showing an entitlement to summary judgment on her affirmative defense. *See id.* at § 983(d)(1); *Celotex*, 477 U.S. at 323.

"An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." *Id.* As with "proceeds" in 18 U.S.C. § 981, the term "innocent owner" is defined differently depending upon the nature of the case:

> (2)(A) With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term "innocent owner" means an owner who--
>
> > (i) did not know of the conduct giving rise to forfeiture; or
> >
> > (ii) upon learning of the conduct giving rise to forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

---

[11] *See* Cl.'s MSJ at 16-19.

> (3)(A) With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property--
>
> > (i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and
> >
> > (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

*Id.* at § 983(d)(2)(A), (3)(A). Here, there is evidence that a public official was bribed in order to procure the Army contracts under which Claimant received payments making up the Respondent Property. Accordingly, the Court finds that Claimant's interest in the Respondent Property was acquired after the conduct giving rise to the forfeiture, and thus that section 983(d)(3)(A) is applicable.

To establish the "innocent owner" defense under section 983(d)(3)(A) Claimant must make a showing that she was a "bona fide" seller of services under the Army contracts. *See id.* at § 983(d)(3)(A)(i). The term "bona fide" is defined as: "in or with good faith." *Kimbell v. United States*, 371 F.3d 257, 263 (5th Cir. 2004); *see also Strangi v. Comm'r*, 417 F.3d 468, 479 (5th Cir. 2005) (stating that the term "bona fide" means "in good faith or without fraud or deceit"). Moreover, a "bona fide sale" is one in which the seller acts in good faith. *See Kimbell*, 371 F.3d at 263. In turn, "good faith" is defined as "[a] state of mind consisting in (1) honesty in belief or purpose … or (4) absence of intent to defraud or seek unconscionable advantage." BLACK'S LAW DICTIONARY (9th ed. 2009). Thus, Claimant's "innocent owner" defense turns on a determination as to her state of mind.

It is well-settled that courts hesitate to grant summary judgment when a case turns on a state of mind determination. *US ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 230 (5th Cir. 2008); *see also Int'l Shortstop v. Rally's, Inc.*, 939 F.2d 1257, 1265 (5th Cir. 1991). Specifically, cases

where the moving party's state of mind is at issue are not well-suited for granting summary judgment because a party's state of mind is inherently a question of fact which turns on credibility. *Int'l Shortstop*, 939 F.2d at 1265 (citing *Miller v. Fed. Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir. 1990) (stating that summary judgment is seldom appropriate in cases where states of mind are decisive elements of a claim or defense)). This is so because it is particularly difficult for the nonmoving party to challenge the movant's summary judgment evidence as to his state of mind without the benefit of trial accessories, especially when that evidence is "self-serving." *See id.* at 1265-66. Finally, to the extent that summary judgment is rarely appropriate when state of mind is at issue, it is even less suitable when the moving party bears the burden of proving his own state of mind. *Id.* at 1266 n.8.

Here, Claimant's only evidence as to whether she was a bona fide seller of services comes in the form of her own, self-serving, affidavit in which Claimant purports to have had no knowledge of the unlawful bribery scheme.[12] However, as noted above, summary judgment is rarely appropriate when a dispositive issue turns on a party's state of mind, particularly when the evidence presented in support of the motion is self-serving. *See id.* 1265-66. Moreover, because this is an affirmative defense, Claimant bears the burden of proof with regard to the state of mind issue, rendering summary judgment further inappropriate. *See id.* at 1266 n.8. Given the heightened scrutiny surrounding a moving party's state of mind in a summary judgment analysis, and the lack of evidence establishing this element beyond Claimant's self-serving testimony, the Court concludes that Claimant has failed to meet the initial summary judgment burden as to her "innocent owner" defense. Accordingly, summary judgment is inappropriate regardless of Petitioner's response. *See Kee*, 247 F.3d at 210.

---

[12] *See generally* Cl.'s MSJ, Ex. B.

Claimant's motion for summary judgment is therefore DENIED with regard to Claimant's 18 U.S.C. § 983(d) "innocent owner" defense.

## IV. Conclusion

In light of the foregoing analysis, Claimant's motion for summary judgment (Doc. No. 33) is DENIED.

SIGNED this 1st day of August, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE